UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PATRICK SCOTT BLACK,           )<br>                                )<br>           Plaintiff,          )<br>    vs.                        )<br>                                )<br>VANDERBURGH COUNTY SHERIFF     )<br>  BRAD ELLSWORTH, et al.,      )<br>                                )<br>           Defendants.         )  | No. 1:08-cv-506-WTL-TAB |

### Entry Granting County Defendants'
### Motion for Summary Judgment

Patrick Black ("Black") was formerly confined at the Vanderburgh County Jail ("Jail") and alleges in this civil rights action, among other claims, that the County defendants violated his federally secured rights while he was confined at the Jail. As referred to in this Entry, the term "County defendants" refers to Vanderburgh County Sheriff Brad Ellsworth, Chief Deputy Wedding, Nurse Tracey Titus, Nurse Blankenship and Nurse Aaron Sheppard, and for the reasons explained in this Entry the County defendants' motion for summary judgment (dkt 52) must be **granted.**

### I. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. Rule 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." **FED.R.CIV.P.** 56(e)(2). In this case, the county defendants have met that burden through their motions for summary

judgment, which Black has not opposed. The consequence of this is that he has conceded the defendants' versions of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56.1(h), of which Black was notified. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). This does not alter the standard for assessing a Rule 56(c) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II.  Background

Black was an inmate in the Jail from July 5, 2006, through January 17, 2007. When Black was admitted into the Jail, he was provided with a handbook entitled "Inmate Handbook Rules and Regulations" (the "*Inmate Handbook*"). Section X of the *Inmate Handbook* is entitled "Commissary." This section sets forth the inmate's purchasing regulations; specifically:

> Commissary is a privilege afforded inmates at reasonable prices on a nondiscriminatory basis. Commissary orders will generally be taken from each eligible inmate and should be filled at least once per week. Inmates shall not be permitted to purchase more than $50.00 of commissary per order. This amount shall not include the cost of what would normally be one time purchase item. The detention center reserves the right to alter this maximum allowed purchase amount without prior notice.

Section III of the *Inmate Handbook* is entitled "Possession of Items in Cell." This section sets forth the inmate's possession of property; specifically:

> Inmates not in general population cells or who have not been issued a property box, shall be permitted to keep a reasonable amount of items within their assigned cell, provided the items are maintained in a neat and orderly manner. Unreasonable amounts or unreasonably disorderly maintained items shall be disposed of, without a hearing.

On November 11, 2006 an incident report was issued stating that Black had three large commissary bags full of contents stuffed under his bunk because his property box was completely full of commissary items. Inmate Black was informed that this was a housing unit violation and that his excess commissary would be placed in the property room. Black's commissary privilege (or "canteen") was suspended until he consumed what he had already purchased.

Chaplain Brenda Steproe served as Jail Chaplain during Black's incarceration at the Jail. Her responsibilities as the Jail Chaplain included, among other things, ensuring that inmates who practiced a recognized religion, were able to practice the religion while incarcerated. As part of her responsibilities, Chaplain Steproe reviewed any religious

materials to determine whether an inmate should be permitted to retain the materials pursuant to the Jail's policies and reviewed any requested dietary restrictions due to religious beliefs. If a dietary restriction request could be honored, Chaplain Steproe would instruct the Food Services Director, Tonya Surber, of any approved restrictions.

During his incarceration, Black advised Chaplain Steproe that he was a Rastafarian. Chaplain Steproe conducted research concerning the religious practices of Rastafarians and confirmed that the majority of Rastafarians are vegetarians with the exception that unlike traditional vegetarians, some Rastafarians consume fish. After completing her research, Chaplain Steproe advised the Food Services Director Surber that Black was not to receive meat products.

Black also requested a King James version of the Bible, but noted that he preferred the "Holy Piley". Chaplain Steproe attempted to locate information about the Holy Piley, but could not locate any information about it even when she conducted a search for the Holy Piley on the internet. Chaplain Steproe was able to locate a copy of the King James version of the Bible and provided a copy of it to Black. Chaplain Steproe advised Black of her inability to locate any information about the Holy Piley that he requested and advised him that if he was able to secure a copy of the Holy Piley from someone outside of the Jail which complied with the Jail's policy with respect to retention of religious materials, Chaplain Steproe would approve his retention of it.

As Food Services Director for the Jail, Tonya Surber oversaw all of the nutritional services at the Jail and ensured that the inmates receive the proper meals once a Jail Chaplain or a member of the Jail's Medical Department placed the inmate on a restricted diet. When advised that an inmate should not receive meat, an inmate was either given fish, if permissible, or a vegetable patty, which closely resembles a meat product. The vegetable patty does not contain any animal components, but is rather comprised of only vegetables and non-animal fillers.

Tracey Titus is a registered nurse with the Jail and is the Nurse Manager for the Jail's Medical Department. Tracey Titus served in the same capacity at the Jail throughout Black's incarceration. Tracey Titus has supervisory authority over the staff members of the Medical Department. The staff from the Jail's Medical Department provided medical care and treatment to Black and were responsible for creating and maintaining his medical records in the Jail. On about July 20, 2006, through September 12, 2006, Black began to complain about the bandages being placed on his leg to treat the wound he incurred during his arrest. Black's bandages were changed and his wound was treated. Specifically, Black's wound was closely examined for signs of infection and his bandages were changed approximately 229 times during his incarceration at the Jail. On two occasions, a staff member witnessed drainage in the wound site. On the first occasion, the staff member made a call to the physician and was advised that Black would be seen at his next doctor's appointment, which was already scheduled, since Black did not have a fever. On the second occasion, when the drainage was witnessed, EMT Shepard placed Black on the list to see a doctor, but Black already had an appointment to see a doctor the next morning.

Black returned from his appointment with instructions from the physician to continue the dressing changes for the next six weeks until the next appointment. At no point in time did Black acquire an infection in the wound site. The medical staff and the outside physician consistently noted that the wound was showing signs of healing well. At no point in time did a physician prescribe an oral antibiotic to be dispensed to Black, aside from the initial prescription prescribed to Black in the hospital at the time of his arrest. On August 21, 2006, Black requested an ace bandage. A member of the medical department contacted the outside physician who advised that there was no need for an ace bandage. Despite the fact that Black acquired no infection during his incarceration at the Jail, Black frequently complained about the type of bandages utilized by the Jail's medical staff or the way that particular Medical Department staff members applied the bandages. By way of example, he preferred one brand of rolled gauze over another. Eventually, Black refused to continue to see the physician on the basis that he did not want to pay to continue to see the physician. Black saw members of the Medical Department for monitoring of his wound on a regular basis and for monitoring his blood pressure regularly.

Former Sheriff Ellsworth and Jail Commander Wedding have never been staff members of the Jail's Medical Department and were not responsible for providing medical treatment to Black.

### III. Discussion

The court summarized Inmate Black's allegations in its October 14, 2008, Entry against the County defendants as follows:

> Black alleges that Tracey Titus allowed nurse Blankenship and Shepard to deny him medical treatment and to falsify his records. Finally, Inmate Black alleges that Brad Ellsworth and Major Wedding allowed Inmate Black's religious beliefs to be disregarded, medical treatment to be denied, meals withheld and canteen seized.

Black's claims are asserted pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

Black's claims concerning the conditions of his confinement at the Jail are analyzed under the Fourteenth Amendment, because the constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). Pursuant to constitutional requirements, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.,* 441 U.S. at 535. Pretrial detainees are entitled, under the Fourteenth Amendment's due process clause to the same basic protections provided to convicted

prisoners under the Eighth Amendment. *Thomas v. Cook County Sheriff's Dep't.*, 2009 WL 4251079, *16 n.1 (7th Cir. December 1, 2009). Under the Due Process Clause, the standard with respect to the right to safe conditions of confinement is whether the defendants acted with deliberate indifference towards the plaintiff by ignoring a known and substantial risk to the inmate's safety. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir. 2002); see also *Payne v. Churchich,* 161 F.3d 1030, 1041 (7th Cir. 1998) ("A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger."). Deliberate indifference requires a showing of two elements in this setting. *Palmer v. Marion County,* 327 F.3d 588, 593 (7th Cir. 2003). First, a detainee must "objectively show that he was incarcerated under conditions posing a 'substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Second, a detainee must establish that the defendant had "knowledge of and disregarded the risk to his safety." Id. (citing *Farmer,* 511 U.S. at 837 ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety.")).

*Medical Care.* The County defendants argue that they are entitled to summary judgment on Black's claim that he was denied medical treatment.

Black has failed to provide any evidence that any County defendant was deliberately indifferent to his serious medical needs. To the contrary, the undisputed facts are that Black was provided with medical care. Medical Department staff members at the Jail changed Black's bandages approximately 229 times during his relatively short incarceration at the Jail. On two occasions, staff members witnessed drainage in the wound site and sought a physician's appointment for Black as a result. At no time did Black acquire an infection in the wound site and the medical staff and the outside physician consistently noted that the wound was showing signs of healing well.

Black's medical treatment at the Jail did not rise to the level of a constitutional deprivation. Accordingly, the County defendants are entitled to summary judgment as to Inmate Black's claims that he was denied medical treatment. *See Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515, 518 (7th Cir. 2002) ("[O]rdinary negligence by prison officials is not enough to show an Eighth Amendment violation." (citing *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir. 1994)).

*Food.* The County defendants argue that Black's claim that food was withheld and that his canteen was seized do not rise to the level of a constitutional deprivation.

The deprivation of food constitutes a violation of an inmate's Eighth Amendment rights only if those conditions involved the deprivation of a single identifiable human need or the denial of the minimal civilized measure of life's necessities. *Wilson v. Seiter,* 501 U.S. 294, 298-305 (1991). The undisputed facts do not remotely suggest such a deprivation here. *Duran v. Elrod,* 760 F.2d 756 (7th Cir. 1985)("The conditions of imprisonment, whether of pretrial detainees or of convicted criminals, do not reach even the threshold of constitutional concern until a showing is made of 'genuine privations and hardship over an extended period of time.'")(quoting *Bell v. Wolfish,* 441 U.S. 520, 542 (1979)).

Inmate Black does not allege that he was denied food for an entire day or any lengthy period of time. Further, the undisputed record reflects that the seizure of Black's commissary ("canteen") was because Black was hoarding too much food under his bunk, a housing unit violation. As a result, Black's excess commissary was placed in the property room and his commissary privilege (or "canteen") was suspended until he consumed what he had already purchased. Black was not deprived of necessary food, just the pantry he desired, and these circumstances did not rise to the level of a constitutional violation.

*Religion.* The County defendants argue that Black's religious beliefs were not disregarded.

Black's allegation that his religious beliefs were disregarded invokes the protection of the free exercise clause of the First Amendment. While Black's complaint is unclear as to which regulation or action taken by staff members of the Jail support his alleged claim that his religious beliefs were disregarded, the undisputed evidence establishes that Black's religious beliefs were not disregarded. Specifically, Chaplain Steproe ordered a special diet for Black consistent with his religion. Chaplain Steproe also provided Black with a King James version of the Bible, as he requested. She also indicated that Black would be permitted to retain a copy of the Holey Piley if he could secure a copy of it from someone outside of the Jail, based on her own inability to locate a copy.

## IV.  Conclusion

Although "'federal courts must take cognizance of the valid constitutional claims of prison inmates,'" *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner,* 482 U.S. at 84), no viable claim of that nature has been presented by Gross in this case. It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). The undisputed factual record shows that the County defendants provided Black with constitutionally adequate medical care and food, and that his religious beliefs were accommodated. In these circumstances, there was no violation of Black's federally secured rights and no reasonable jury could conclude otherwise. The County defendants' motion for summary judgment (dkt 52) is **granted.**

The resolution of claims against the County defendants action resolves all claims against the remaining defendants. Accordingly, final judgment consistent with this Entry and with the prior rulings in this action shall now issue. The costs of this action are assessed against the plaintiff, Patrick Black.

**IT IS SO ORDERED.**

Date: 12/11/2009

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana